1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

MID-CENTURY INSURANCE COMPANY,

               Plaintiff,

    vs.

KBM SEATTLE, LLC; KEITH B.
MATHEWSON; SALLY MATHEWSON; and
MICHAEL YOUNG,

               Defendants.

Cause No. 2:19-cv-01572 JCC

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**Noted on Motion Calendar:
January 3, 2020**

## I. INTRODUCTION

Plaintiff Mid-Century Insurance Company ("Mid-Century") moves for summary judgment that it has no coverage obligation for the bodily injury claims asserted against KBM Seattle, LLC ("KBM") and Keith and Sally Mathewson (the "Mathewsons") arising out of an incident at 4841 West Marginal Way S.W., Seattle, WA 98106 ("the Marginal Way location"). Mid-Century's summary judgment motion should be granted because there is no potential coverage under the insurance policy issued by Mid-Century pursuant to the "Designated Premises" endorsement ("DPE") which limits coverage under the policy to bodily injury arising

out of the ownership, maintenance or use of the designated premises and operations necessary or incidental to those premises.  The Marginal Way location where the injury occurred is not a designated premises under the policy. Accordingly, there is no coverage.

## II. STATEMENT OF FACTS

### A.  The Mid-Century Policy

Mid-Century issued policy no. 60488-77-40 to KBM (the "Policy") for the relevant policy period of August 23, 2015 to August 23, 2016.[1]  On the declarations page of the Policy, the type of business is identified as "real estate"[2] and the "covered premises and operations" locations are identified as "5604 Delridge Way Sw Seattle, WA 981066-1444" and "5600 Delridge Way Sw Seattle, WA 98106" ("the Delridge locations").[3]  In general, the Policy provides:

> A.     Coverages
>
> 1.     Business Liability
>
> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . . to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1)     The amount we will pay for damages is limited as described in Section D Liability And Medical Expenses Limits Of Insurance; and
>
> (2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the

---

[1] *See* the Declaration of Misty Edmundson in support of Motion for Summary Judgment at Ex. A ("Edmundson Decl.").

[2] Edmundson Decl., Ex. A at p. 9.

[3] Edmundson Decl., Ex. A, at p. 24.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 2
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension Supplementary Payments.

    b.      This insurance applies:

        (1)      To "bodily injury" . . . . only if:

            (a)      The "bodily injury" . . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

            (b)      The "bodily injury" . . . . occurs during the policy period.[4]

The Policy is additionally subject to the "Limitation of Coverage to Designated Premises or Project," endorsement which provides:

### LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

### SCHEDULE*

**Premises:**

**Project:**

The following is added to the Businessowners Liability Coverage Form:

This insurance applies only to "bodily injury," . . . .  arising out of:

**1.**      The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

**2.**      The project in the Schedule.

*      Information required to complete this Schedule, if not shown on the endorsement, will be shown in the Declarations.[5]

As discussed above, the Declarations pages of the Policy identify only the Delridge locations as the "covered premises and operations." At the Delridge locations, KBM subleases

---

[4] Edmundson Decl., Ex. A, p.80.
[5] Edmundson Decl., Ex. A at p. 95.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 3
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

commercial kitchen space to various caterers.[6] The Policy makes no reference to the Marginal Way location.

**B.      The Liability Action**

In *Michael Young v. KBM Seattle, LLC,* King County Superior Court cause no. 19-2-01054-1 SEA (the "Liability Action") claimant Michael Young ("Young") alleges that he suffered bodily injury while he was visiting the Marginal Way location.[7]   Young specifically alleges:

* * * *

3.1     On February 12, 2016, Defendants Jack were the owners of the commercial property located at 4841 W. Marginal Way, Seattle, Washington. Prior to the above date, Defendant's Jack leased out a portion of their commercial building at the above address to . . . . KBM . . . .with the intent of subletting portions of the premises to other wood craftsmen such that all the craftsmen on the sight [sic] could work individually or collectively on different projects . . . .

3.2     Prior to February 12, 2016, Defendants KBM and Mathewson sub-leased a portion of the premises to defendant West Coast Innovations Inc., with the intent that West Coast would use the space for the production of commercial cabinetry and other related wood products.

* * * *

3.6     On February 16, 2016, plaintiff Michael Young was invited to the above premises by Scott Gunther of West Coast Innovations in order to pick him up to and provide him a ride.  Plaintiff at the time of this incident was not an employee of any of the Defendants and was purely a business invitee.  Plaintiff arrived at the premises, and while waiting for Mr. Gunther to arrive, was asked by an employee of West Coast Innovations to help carry a cabinet upstairs to the finishing room.  Plaintiff agreed to do so, and after picking up one end of the cabinet, started walking up the stairs backwards holding the cabinet while the West Coast employee held the other end at the bottom end of the stairs.[8]

3.7     When Plaintiff got towards the top stairs, he was forced to the outside of the stairwell by the overhanging shelf installed by Defendants KBM and Mathewson.  As Plaintiff got to the top stair, he lifted his left foot to step on what

---

[6] Edmundson Decl., Ex. B at p. 28, lines 8-14; p. 97, lines 10 – 18.
[7] Edmundson Decl., Ex. C at pps. 2 - 5.
[8] Edmundson Decl., Ex. C, p. 4 at ¶3.6.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 4
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

should have been a 48 inch landing to match the width of the stairs, but there was no landing there to be stepped on because Defendants KBM and Mathewson completely failed to follow all applicable codes regarding stairway construction, and all applicable WISHA codes regarding fall protection of employees.  As a result, when Plaintiff expected to place his foot on the landing, his foot instead stepped into the 12-24 foot area where there was nothing but air.  As a result of the lack of any railing on the stairs or landing, Plaintiff fell backwards over the edge of the upper landing and fell over 10 feet to the concrete floor below him. When Plaintiff struck the floor, he landed on his head, causing a skull fracture and significant brain injury.  Plaintiff also sustained numerous musculoskeletal injuries as well as to other parts of his body.  Additionally, Defendant West Coast Innovations' employee lost control of the cabinet, which caused the employee to tumble down the steps backwards as well.[9]

### III. RELIEF REQUESTED

Mid-Century seeks an order declaring that there is no duty to defend and/or indemnify KBM or the Mathewsons under the Policy for the claims in the Liability Action, as well as a declaration that Mid-Century be allowed to withdraw from the defense in the Liability Action and that it is entitled to recoupment of defense costs it has expended to defend the Liability Action.

### IV. STATEMENT OF ISSUES

Under Washington law, does the application of the DPE in the Policy preclude coverage for the claims in the Liability Action when the incident and injury did not occur at, or arise out of operations necessary or incidental to, the Delridge locations?

### V. EVIDENCE RELIED UPON

This motion is based upon Fed. R. Civ. P. 56, the pleadings and records herein, the Declaration of Misty Edmundson and exhibits attached thereto, and the following authorities and arguments.

---

[9] Edmundson Decl., Ex. C, pps. 4 – 5 at ¶3.7.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 5
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

## VI.   AUTHORITY AND ARGUMENT

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10]  The purpose of summary judgment is to "dispose of factually unsupported claims or defenses."[11]   In opposing summary judgment, the non-moving party must come forward with more than a "mere scintilla" of evidence.[12]  Neither argumentative assertions nor speculation can defeat summary judgment.[13]

This motion involves both factual and legal issues.  The legal issues – construction of the insurance policy terms – are questions of law for the Court.[14]  The factual issues are not in dispute.

### B.   Standard for Policy Interpretation

The interpretation of an insurance policy is a question of law, "in which the policy is construed as a whole and each clause is given full force and effect."[15]  The insurance contract will not be given a forced or strained construction that would lead to an absurd conclusion, or that would render the contract nonsensical or ineffective.[16]

---

[10] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986).

[11] *Celotex*, 477 U.S. at 323–24.

[12] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

[13] *E.g., Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825 (9th Cir. 2001); *Estrella v. Brandt*, 682 F.2d 814 (9th Cir. 1982).

[14] *Queen City Farms v. Cent. Nat. Ins. Co.*, 126 Wn.2d 50, 65, 882 P.2d 703 (1994).

[15] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002), *citing Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 881 P.2d 1020 (1994).

[16] *Wash. Pub. Util. Dists. Utils. System v. Pub. Util. Dist. No. 1*, 112 Wn.2d 1, 11, 771 P.2d 701 (1989).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 6
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

When policy language is clear and unambiguous, the court must enforce it as written.[17] The court will not create an ambiguity where none exists.[18]  Nor will the court modify unambiguous language under the guise of construing it.[19]  Therefore, when the plain language of an insurance policy does not provide coverage, the court will not rewrite the policy to do so.[20]  This rule of construction applies to endorsements as well as to the main policy.[21] Endorsements are part of the policy and should be construed with the policy as a whole.[22]

The Court follows a two-step process in determining whether an insurance policy covers an insured's claim.[23]  First, the court must determine whether the insured has established that the claim falls within the scope of coverage.[24]  This initial burden includes establishing who is an insured and the type of risk insured against.[25]  If the insured does not produce evidence sufficient to carry its burden, then there is no coverage.  Second, if the claim falls within the scope of coverage, the court determines whether an exclusion bars the claim.[26] Additionally, on a motion for summary judgment, the insured's burden is one of production; the insured must produce evidence sufficient to support a prima facie conclusion of coverage.[27] Where the insured is the non-moving party, its burden may not be satisfied by mere allegations

---

[17] *Id.* at 10.
[18] *Transcon. Ins. Co. v. Wash. Utils. Dist's Util. Sys.,* 111 Wn.2d 452, 456, 760 P.2d 337 (1988).
[19] *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 528, 707 P.2d 125 (1985).
[20] *Grange Ins. Co. v. Brosseau,* 113 Wn.2d 91, 99, 776 P.2d 123 (1989).
[21] *Kitsap Cnty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 575-76, 964 P.2d 1173 (1998).
[22] *Id.; see also Primerica Life Ins. Co. v. Madison*, 114 Wn. App. 364, 367, 57 P.3d 1174 (2002) (a slip or rider, attached to a policy and referred to therein as part of the contract, should be construed and harmonized with the other provisions) *citing Holthe v. Iskowitz*, 31 Wn.2d 533, 541, 197 P.2d 999 (1948); *Pac. W. Sec., Inc. v. Ill. Union Ins. Co.*, 2012 WL 3763551, at *5 (W.D. Wash. 2012).
[23] *McDonald v. State Farm Fire & Cas. Co.,* 119 Wn.2d 724, 731, 837 P.2d 1000 (1992.
[24] *Id.*
[25] *Olivine Corp. v. United Capitol Ins., Co.*, 147 Wn.2d 148, 164, 52 P.3d 494 (2002) *citing Farmers Ins. Co. of Wash. v. Fredrickson*, 81 Wn. App. 319, 322, 914 P.2d 138 (1996).
[26] *Id.*
[27] *See Pub. Employees Mut. Ins. Co. v. Rash.*, 48 Wn. App. 701, 703, 740 P.2d 370 (1987).

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

1    or denials; rather, the insured must set forth specific facts or other evidence showing that there

2    is a genuine issue for trial.[28]

3    **C.    Standards for the Duties to Defend and Indemnify**

4    An insurer's duty to defend arises when an action is first brought, and it is based on the

5    insured's potential liability for the claims as alleged in the Liability Action.[29]   The duty to

6    defend arises "when a complaint against the insured, construed liberally, alleges facts which

7    could, if proven, impose liability upon the insured within the policy's coverage."[30]   Although

8    this standard is broad, "insurers do not have an unlimited duty to defend"; the duty is "not

9    triggered by claims that clearly fall outside the policy."[31]   The duty to defend generally is

10   determined from the "eight corners" of the insurance contract and the underlying complaint.[32]

11   It is only when the allegations in the complaint conflict with facts known to or readily

12   ascertainable by the insurer, or if the allegations in the complaint are ambiguous or inadequate,

13   may facts outside the complaint be considered.[33]   An insurer has no duty to defend "if the

14   alleged claims are clearly outside the policy's coverage."[34]

15   "The duty to indemnify hinges on the insured's actual liability to the claimant and

16   actual coverage under the policy."[35]   In this sense, "the duty to defend is broader than the duty

---

[28] *Id.* at 430, *quoting* CR 56(e).

[29] *Truck Ins. Exch. v. Vanport Homes, Inc*., 147 Wn.2d 751, 760, 58 P.3d 276 (2002); *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 201–02, 317 P.3d 532 (2014), *citing Woo v. Fireman's Fund Ins. Co.,* 161 Wn.2d 43, 52–53, 164 P.3d 454 (2007).

[30] *Woo,*161 Wn.2d at 52–53; *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802, 329 P.3d 59 (2014), *as corrected* (Aug. 6, 2014).

[31] *Id.*

[32] *Expedia,*180 Wn.2d at 803.

[33] *VanPort Homes,* 147 Wn.2d at 761*; Holly Mountain Res., Ltd. v. Westport Ins. Corp.*, 130 Wn. App. 635, 647–48, 104 P.3d 725 (2005, *abrogated on other grounds by Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 297 P.3d 688 (2013).

[34] *Holly Mt. Res., supra.,*130 Wn. App. at 647.

[35] *Hayden v. Mut. of Enumclaw Ins. Co*., 141 Wn.2d 55, 64, 1 P.3d 1167 (2000).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 8
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

to indemnify."[36] Accordingly, if there is no duty to defend a suit because there is no possibility of covered liability, there will certainly be no duty to indemnify the ultimate liability.[37]

Because there is no possibility of coverage under the Policy for the claims alleged in the Liability Action, Mid-Century has no duty to defend or indemnify KBM or the Mathewsons.

**D.    The Policy Does Not Afford Coverage for the Claims in the Liability Action**

When the factual allegations in the Liability Action and the provisions of the Policy are scrutinized, it is clear that no coverage is afforded and thus, there is no duty to defend or indemnify.

*1.    The Application of the DPE Bars Coverage*

The DPE modifies the scope of coverage afforded by the Policy to extend coverage solely for "bodily injury" arising out of the ownership, maintenance or use of the Delridge locations and operations necessary or incidental to the Delridge locations.  However, the claims in the Liability Action are unambiguously for "bodily injury" arising out of the use and operations at the West Marginal Way location.  Accordingly, because the bodily injury at issue does not arise out of the use and operations of the Delridge locations, under the plain language of the Policy, there is no coverage.

"The modern CGL policy provides basic 'premises and operations' coverage. This coverage insures for damages arising out of an occurrence at the insured's place of business as a result of the insured's ongoing business activities."[38] The DPE clarifies that the scope of coverage provided by the insuring agreement in the Policy extends, in pertinent part, "only to 'bodily injury' . . . arising out of the ownership, maintenance or use of" the Delridge locations

---

[36] *Hayden v. Mut. of Enumclaw Ins. Co.*, 95 Wn. App. 563, 569, 977 P.2d 608 (1999).
[37] *See id.*
[38] *Goodwin v. Wright,* 100 Wn. App. 631, 635 – 636, 6 P.3d 1 (2000) (emphasis added.).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 9
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

and operations necessary or incidental to the Delridge locations.[39]   In other words, whether

there is coverage depends upon a causal connection between Young's alleged bodily injury

and the Delridge locations. As used in the DPE, the phrase "arising out of" means originating

from, having its origin in, growing out of or flowing from,[40] and requires a causal

connection.[41]   In *W. Heritage Ins. Co. v. Hoover,[42]* the court reasoned, "[i]n determining

whether an injury or damage arose out of the use of a designated premises, we adopt the legal

interpretation of 'arising out of' . . . . In the insurance context, this phrase is often interpreted

to require a causal connection between the injuries alleged" and the premises designated in the

policy.[43]   Thus, the plain terms of the Policy require a causal nexus between Young's injury

and (1) the ownership, maintenance or use of the Delridge locations or (2) operations

necessary or incidental to the Delridge locations.  Neither exists here.

The Liability Action clearly alleges that Young was injured at the Marginal Way

location while he was helping a subtenant move a woodworking project.  There are absolutely

no factual allegations in the Liability Action that would link Young's claim to the use or

operations of the Delridge locations which are used for kitchen preparation by caterers.[44]

While no published Washington decisions have examined the DPE, two related

unpublished decisions, one in the Ninth Circuit and one in the Washington Court of Appeals,

found that an identical DPE applied to preclude coverage when the alleged bodily injury did

---

[39] *See Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc.,* 2014 WL 639420 at *6 to *7 (E.D.N.Y. Feb. 18, 2014) (adopting insurer's position that the DPE modified the scope of coverage); *Chicago Ins. Co. v. DHS/ Diversified Health Services, Inc.,* 2005 WL 1009553 at *6 (W.D.Tenn. April 21, 2005) (DPE defines scope of coverage afforded under excess policy).

[40] *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989).

[41] *Kroeber v. GEICO Ins. Co.*, 184 Wn.2d 925, 930, 366 P.3d 1237 (2016).

[42] *W. Heritage Ins. Co. v. Hoover*, 2016 WL 1242091, at *5 (W.D. Wash. Mar. 30, 2016).

[43] *Id.* at *5; *C. Brewer and Co., Ltd. v. Marine Indem. Ins. Co. of America,* 135 Hawaii 190, 347 P.3d 163, 166 (2015).

[44] Edmundson Decl., Ex. B at p. 28, lines 8-14; p. 97, lines 10 – 18.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 10
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

not arise out of the use of, or operations necessary or incidental to, the insured location.[45]  In

*Anderson*[46], the insurance company issued a liability insurance policy subject to a DPE which

limited the scope of coverage to the premises of the BluWater Bistro restaurant in Seattle, and

those operations "necessary and incidental to those premises."  BluWater sought coverage for

bodily injury that occurred at a company party it hosted at a beach-home about 25 miles from

the restaurant's Seattle location.  Reasoning that "insurance policies are viewed as a contract,

and are 'construed as a whole, with the policy being given a fair, reasonable, and sensible

construction as would be given to the contract by the average person purchasing insurance,"[47]

the Ninth Circuit concluded that the policy did not extend coverage to bodily injury which

occurred at the beach house and not the restaurant's Seattle location finding that that the

average person would not consider bodily injury occurring at a party as incidental to the

operations of the BluWater restaurant location.[48]

The Washington Court of Appeals in *Bada*[49] agreed with the Ninth Circuit.  After the

trial court in the federal coverage action granted summary judgment regarding the DPE and the

Ninth Circuit affirmed in *Anderson*,[50] the insured filed an action for professional negligence

against his insurance agent in state court.  The state trial and appellate courts agreed with the

federal courts in the coverage action and found that the DPE modified the coverage provided

under the Westport policy so that no coverage was afforded for the bodily injury that occurred

---

[45] *See Westport Ins. Co. v. Anderson*, 31 Fed.Appx. 362, 2002 WL 460850 (2002)(unpub.) and *Bada Restaurant, Inc. v. Hentschell & Associates, Inc.*, 120 Wn. App. 1030, 2004 WL 3703709 (2004) (unpub.).
[46] *Anderson*, 31 Fed.Appx. 362.
[47] *Id., citing American Nat'l Fire v. B&L Trucking*, 134 Wn.2d 413, 951 P.2d 250, 256 (1998).
[48] *Id.*
[49] *Bada,* 120 Wn. App. 1030, 2004 WL 3703709.
[50] 2004 WL 370709 at *2.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 11
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON 98101
(206) 624-1800/Fax (206) 624-3585

away from the insured location and that did not arise out of operations necessary and incidental to, the insured location.[51]

Similarly, the application of the DPE here extends coverage under the Policy only to "bodily injury" arising out of the ownership, maintenance or use of the Delridge locations and operations necessary or incidental to the Delridge locations[52]  The Delridge locations contain commercial kitchens used by caterers for food preparation.[53]  Young's injury undisputedly occurred at the West Marginal Way location in the course of operations related solely to the West Marginal Way location – the moving of cabinetry from one floor to another by a subtenant at the Marginal Way location.  Young's injury simply did not arise out of, originate from, or flow from[54] the use of the Delridge locations or operations necessary or incidental thereto.[55]  The Policy's Declarations pages unambiguously identify that the Delridge locations are the only "covered premises and operations" and further clearly identify that the Policy was subject to form BP04120187, "Limitation of Covg to Desig Prem or Proj."[56]  Thus, because

---

[51] *Id.* at *3.  Foreign authority is in accord: *see Accessories Biz, Inc. v. Linda and Jay Keane, Inc.,* 533 F.Supp. 2d 381, 388 – 389 (S.D.N.Y. 2008) ( the purpose of the DPE is to insure against liability incident to ownership, maintenance, or use of the listed premises and operations necessary or incidental to those premises); *Midwood Lumber,* 2014 WL 639420 at *7 ( "the clear language of the policy limits coverage to operations that are "necessary or incidental" to the premises themselves"); *Musselwhite v. Florida Farm General Insurance Company,* 273 So.2d 251 (Fl. Dist Ct. of App. May 28, 2019) (no coverage when injury arose out of acts or omissions which were not necessary or incidental to business conducted on the feed store premises); *Space Unlimited, LLC v. Travelers Cas. Ins. Co. of Am.,* 2018 WL 5017925 at *4 (D. Minn. Oct. 16, 2018) ( DPE limits "coverage to liabilities that were related to events originating at one of the listed locations.").

[52] Edmundson Decl., Ex. A, at pps. 24 and 95.

[53] Edmundson Decl., Ex. B at p. 28, lines 8-14; p. 97, lines 10 – 18.

[54] *Toll Bridge Auth.* 54 Wn. App. at 404.

[55] *Kroeber,* 184 Wn.2d at 930.

[56] Edmundson Decl., Ex. A, pps. 24 - 26; *see also American Guarantee and Liab. Ins. Co. v. 1906 Co.,* 129 F.3d 802, 806 (5th Cir. 1997) (when declarations pages identify covered premises and that policy is subject to DPE, then the DPE "is sufficiently clear to qualify as unambiguous" and limits coverage to injuries arising out of listed premises only).  The identification of the designated premises on the declarations pages of the Policy distinguishes this matter from the facts at issue in *Hoover, supra.,* 2016

---

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

there is no causal nexus between Young's injury and either (1) the maintenance or use of the Delridge locations or (2) operations necessary or incidental to the Delridge locations, there is no coverage under the Policy. Summary judgment is appropriate in this regard.

2.     *There Is No Duty to Defend or Indemnify*

The allegations in the Liability Action are neither ambiguous nor inadequate: the allegations clearly do not allege a claim that implicates coverage under the Policy. It is undisputed that there are no allegations regarding any bodily injury related to the Delridge locations.[57] Because the "triggering event" for a duty to defend is "the filing of a complaint alleging covered claims,"[58] and the Liability Action does not allege covered claims under the Policy, there is no duty to defend. In *State Farm Gen. Ins. Co. v. Emerson,*[59] the Court stressed:

> . . . . **an insurer is obliged to defend only allegations on the face of the pleading which give rise to a covered event. Thus, the duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations** rendering the insurer liable to the insured under the policy.[60]

Here, there are no factual allegations in the complaint which implicate coverage under the Policy, there is no duty to defend. When there is no duty to defend a suit because there is no possibility of covered liability, there will certainly be no duty to indemnify the ultimate liability.[61]    Thus, there is no duty to defend or indemnify KBM or the Mathewsons under the

WL 1242091 at *8, where the district court found ambiguity in the application of a DPE because the declarations pages of the policy therein did not identify the designated premises.
[57] Edmundson Decl., Ex. C.
[58] *Griffin v. Allstate,* 108 Wn. App. 133, 138, 29 P.3d 777 (2001).
[59] *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984).
[60] 102 Wn.2d at 486 (boldface supplied); *see also Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998).
[61] *See id.*

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

1    Policy for the claims in the Liability Action.  Thus, summary judgment should be granted in

2    this regard.

3    **E.      Mid-Century May Withdraw From Defense**

4            If this Court determines that the allegations in the Liability Action are not covered

5    under the Policy, then Mid-Century should be allowed to withdraw from defending KBM and

6    the Mathewsons in the Liability Action.  An insurer's duty to defend its insured ends when it is

7    determined that a claim is not covered.[62] When a declaratory judgment action determines there

8    is no coverage, then the insurer, "may withdraw from the defense . . . ."[63] In *Farmers Ins.*

9    *Group v. Johnson*[64], the insured argued that it was error for the trial court to rule that Farmers

10   could withdraw its defense.  While the appellate court found the issue moot, *in dicta*, it found

11   no error and stressed, "an insurer has no duty to defend its insureds if their complaint alleges an

12   event not covered by the policy."[65] Accordingly, if the Court grants Mid-Century's motion with

13   regard to the duty to defend, entry of an order declaring that Mid-Century is entitled to

14   withdraw from the defense is appropriate.[66]

15

16

---

17   [62] *See Alea,* 168 Wn.2d at 405; *Kirk v. Mt. Airy Ins. Co.,* 134 Wn.2d 558, 561, 951 P.2d 1124 (1998).

18   [63] *Canal Indem. Co. v. Adair Homes, Inc.*, 737 F. Supp. 2d 1294, 1303 (W.D. Wash. 2010), *aff'd,* 445 F.
     Appx. 938 (9th Cir. 2011), *citing Farmers Ins. Group v. Johnson,* 43 Wn. App. 39, 44, 715 P.2d 144
     (1986).

19   [64] 43 Wn. App. at 44.

     [65] *Id., citing Talarico v. Foremost Ins. Co.,* 105 Wn.2d 114, 117, 712 P.2d 294 (1986).
20   [66] *State Farm Fire and Cas. Co. v. Hardie,* 2018 WL 1211770 at *3 (W.D.Wash. March 8, 2018)
     (Insurer entitled to withdraw from underlying defense "within 14 days" of the Court's order); *Atlantic*
21   *Casualty Ins. Co. v. Bellinger*, 2017 WL 3996408 at *4 (E.D.Wash. September 8, 2017) ("Atlantic may
     withdraw from the defense it is currently providing . . ."); *State Farm Fire and Cas. Co. v. El-*
22   *Moslimany,* 178 F. Supp. 3d 1048, 1062 (W.D.Wash. April 15, 2016) ("The Court will enter judgment
     declaring State Farm has no duty to defend."); and *State Farm Fire & Cas. Co. v. Weber,* 2014 WL
23   7240654 at *3 (W.D.Wash. December 19, 2014) ("Effective 10 days from entry of this order, State
     Farm may withdraw from the defense it is currently providing . . .").

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

1  **F.     Mid-Century Is Entitled To Reimbursement of Defense Costs**

2          If the Court determines that Mid-Century has no duty to defend, then Mid-Century is

3  entitled to reimbursement of the monies it has spent defending KBM and Mathewson since

4  September 11, 2019.  The Policy provides:

5          If we initially defend an insured or pay for an insured's defense but later
           determine that none of the claims, for which we provided a defense or defense
6          costs, are covered under this insurance, we have the right to reimbursement for
           the defense costs we have incurred.
7
           The right to reimbursement under this provision will only apply to the costs we
8          have incurred after we notify you in writing that there may not be coverage and
           that we are reserving our rights to terminate the defense or the payment of defense
9          costs and to seek reimbursement for defense costs.[67]

10         In Mid-Century's September 11, 2019 correspondence with KBM, it reserved "its rights

11 to terminate the defense and to seek reimbursement for defense costs."[68] Recently, two

12 Washington federal trial courts have analyzed this exact reimbursement provision.[69] In the

13 reservation of rights letters in those two cases, the insurers informed the insureds of the

14 foregoing endorsement and reserved their "right[s] to terminate the defense . . . and to seek

15 reimbursement . . . of the defense costs paid." The court in *Massachusetts Bay* expressly and

16 explicitly denied the request to certify to the Washington Supreme Court the question of

17 whether the defense cost reimbursement endorsement was valid under *Immunex*.[70] The district

18 

---

19 [67] Edmundson Decl., Ex. A at p. 118.
20 [68] Edmundson Decl., Ex. D at pps. 8; 12-13.
[69] *See Massachusetts Bay Insurance Company v. Walflor Industries, Inc., et al.*, 383 F.Supp.3d 1148,
20 2019 WL 1651659 (April 17, 2019); *see also, Mid-Century Ins. Co. v. Hunt's Plumbing and
Mechanical*, 2019 WL 4464302 at *8-9 (W.D.Wash. Sept. 17, 2019) (finding identical defense
21 reimbursement provision enforceable but finding questions of fact regarding whether other coverage
parts applied to the claim precluded summary judgment).
22 [70] *Immunex*, 176 Wn.2d at 887-88. The Washington Supreme Court has previously ruled that when an
insurance policy does not contain an express condition allowing for reimbursement of defense costs,
23 that such costs are not recoupable.  Unlike here, *Immunex* dealt with a situation where the policy did not
contain express language allowing for defense costs recoupment.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 15
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

court found that unlike the policy in *Immunex*, the Massachusetts Bay policies included an express endorsement stating that Massachusetts Bay was entitled "to seek reimbursement for defense costs." The court held that the right to reimbursement of defense costs in Washington turns on the express language provided in the insurance contract and that "[n]othing in the endorsement at issue here interferes with an insurer's obligations to comply with *Tank's* 'specific criteria' while defending under a reservation of rights."[71] The court further held that *Tank* does not prohibit an insurer from including a defense cost reimbursement provision in its policy.[72]

Here, the defense cost reimbursement language is identical to that in *Massachusetts Bay* and *Hunt's Plumbing*.[73] Mid-Century expressly reserved its rights to seek recoupment of defense costs.[74] Thus, Mid-Century is entitled to seek reimbursement of any defense costs it has incurred after September 11, 2019, and summary judgment should be granted on this basis as well.

## VI. CONCLUSION

For the foregoing reasons, summary judgment should be granted and the Court should issue a declaration (1) absolving Mid-Century of any obligations to defend or indemnify KBM or the Mathewsons in the Liability Action; (2) allowing Mid-Century to withdraw from the defense of KBM and the Mathewsons in the Liability Action; and (3) entitling Mid-Century to reimbursement of defense costs.

---

[71] 383 F.Supp.3d. at 1169.
[72] *Id*.
[73] Edmundson Decl., Ex. A at p. 118.
[74] Edmundson Decl., Ex. D at pps. 8; 12 – 13.

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

DATED this 5th day of December, 2019.

SOHA & LANG, P.S.


By:   */s/Misty Edmundson*
    Misty Edmundson, WSBA # 29606
    Email address Edmundson@sohalang.com
    Sarah Davenport, WSBA # 45269
    Email address davenport@sohalang.com
    **Soha & Lang, P.S.**
    1325 Fourth Avenue, Suite 2000
    Seattle, WA  98101-2570
    Telephone:  206-624-1800
    Facsimile:   206-624-3585
    Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 17
USDC WD WA/SEA CAUSE NO.  2:19-cv-01572 JCC

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585